**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**THE NEW YORK STATE POLICE INVESTIGATORS
ASSOCIATION, LOCAL 4 IUPA, AFL-CIO, by its
President Jeffrey Kayser; JOSEPH BARRETT, on
behalf of himself and all others similarly situated;
TIMOTHY MULVEY, on behalf of himself and all others
similarly situated; JAMES O'CONNOR, on behalf of
himself and all others similarly situated; LAWRENCE
SHEWARK, on behalf of himself and all others similarly
situated; PATRICIA HYNES, on behalf of herself and
all others similarly situated; PAULA OLSEN, on
behalf of herself and all others similarly situated; and
JEFFREY KAYSER, on behalf of himself and all others
similarly situated,**

        **Plaintiffs,**

 **vs.**                   **1:11-CV-1527
                       (MAD/CFH)**

**ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York; PATRICIA A. HITE,
individually and in her official capacity as Acting
Commissioner of the New York State Department of Civil
Service; CAROLINE W. AHL and J. DENNIS HANRAHAN,
in their official capacities as Commissioners of the New York
State Civil Service Commission; ROBERT L. MEGNA,
individually and in his official capacity as Director of the New
York State Division of the Budget; and THOMAS P.
DiNAPOLI, in his official capacity as Comptroller of the
State of New York,**

        **Defendants.**
_____

**APPEARANCES:**           **OF COUNSEL:**

**GLEASON, DUNN LAW FIRM**      **MARK T. WALSH, ESQ.**
40 Beaver Street            **BRENDAN D. SANSIVERO, ESQ.**
Albany, New York 12207
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**      **HELENA LYNCH, AAG
STATE ATTORNEY GENERAL**      **RICHARD LOMBARDO, AAG**

The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION[1]

In a complaint dated December 21, 2011, Plaintiffs allege that Defendants unilaterally increased the percentage of contributions that Plaintiffs, active and retired employees, are required to pay for health insurance benefits in retirement and, thereby, violated the Contracts and Due Process Clauses of the United States Constitution, impaired Plaintiffs' contractual rights under the terms of their Collective Bargaining Agreement, and violated state law. *See* Dkt. No. 1. On July 28, 2014, Plaintiffs amended their complaint. *See* Dkt. No. 51. In their amended complaint, Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and money damages, to redress Defendants' alleged deprivation of Plaintiffs' rights secured pursuant to the Contracts Clause of the United States Constitution, the Fourteenth Amendment to

---

[1] The instant case is one of eleven related cases currently before this Court, all brought against, for the most part, the same individual Defendants and are all related to the increase in contribution rates for retirees' health insurance. *See Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.); *NYSCOBA, Inc. v. New York*, No. 1:11-cv-1523 (N.D.N.Y.); *N.Y.S. Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v. New York*, No. 1:11-cv-1525 (N.D.N.Y.); *Police Benevolent Assoc. of the N.Y.S. Troopers, Inc. v. New York*, No. 1:11-cv-1526 (N.D.N.Y.); *N.Y.S. Police Investigators Assoc., Local 4 IUPA, AFL-CIO v. New York*, No. 1:11-cv-1527 (N.D.N.Y.); *Police Benevolent Assoc. of N.Y.S., Inc. v. New York*, No. 1:11-cv-1528 (N.D.N.Y.); *Krey v. Cuomo*, No. 1:11-cv-1529 (N.D.N.Y.); *Spence v. New York*, No. 1:11-cv-1533 (N.D.N.Y.); *Roberts v. New York*, No. 1:12-cv-46 (N.D.N.Y.); *N.Y. Court Officers Assoc. v. Hite*, No. 1:12-cv-532 (N.D.N.Y.); *Brown v. New York*, No. 1:13-cv-645 (N.D.N.Y.). With minor variations, the related cases all assert the same causes of action and raise the same arguments in the pending motions for summary judgment. The Court has determined that *Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.) shall serve as the "Lead Case." Familiarity with the Lead Case is presumed. The Court adopts and incorporates by reference the related Memorandum-Decision and Order in the Lead Case into this Memorandum-Decision and Order and will only address those facts and legal issues that are distinct from the Lead Case.

the United States Constitution, 42 U.S.C. § 1983, Article I, § 6 of the New York State Constitution, and for breach of contract, and violation of New York State Civil Service Law § 167, resulting from Defendants' unilateral action effective October 1, 2011, increasing the contribution rates that Plaintiffs pay for their health insurance in retirement. *See id.* at ¶¶ 2-3.

Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 88.

## II. BACKGROUND

**A.     The Parties**

Plaintiff New York State Police Investigators Association, Inc. ("NYSPIA") is the collective bargaining representative for members of the Investigators and Senior Investigators Unit of New York State Employees, many of whom are enrolled in and receive benefits through the New York State Health Insurance Program ("NYSHIP"). *See* Dkt. No. 88-2 at ¶ 1. Plaintiffs Jeffrey Kayser and Timothy Mulvey were, at the relevant times, active employees of the State of New York, and members NYSPIA. *See id.* Plaintiff Joseph Barret was an active employee of the State of New York and a member of the bargaining unit represented by NYSPIA during 2011 and until his retirement on June 20, 2012. *See id.* at ¶ 2. Plaintiffs James O'Connor and Lawrence Shewark are former employees of the State of New York who were, during their employment, members of the bargaining unit represented by NYSPIA. *See id.* at ¶ 3. Plaintiffs O'Connor and Shewark are retired and are receiving health insurance benefits. *See id.* at ¶ 4. Plaintiff Patricia Hynes is the unremarried spouse of Patrick Hynes, now deceased, who was a member of a bargaining unit represented by NYSPIA. *See id.* at ¶ 5. Plaintiff Hynes was receiving individual coverage health insurance benefits from the State of New York. *See id.* at ¶ 6. Plaintiff Paula Olsen is the unremarried spouse of Richard Olsen, now deceased, who was a member of the

3

bargaining unit now represented by NYSPIA. *See id.* at ¶ 7. Plaintiff Olsen was receiving individual coverage health insurance from the State of New York. *See id.* at ¶ 8.

Defendant Andrew M. Cuomo is the Governor of the State of New York. *See* Dkt. No. 88-2 at ¶ 9. Defendant Patricia A. Hite was, in 2011, Acting Commissioner of the New York State Department of Civil Service. *See id.* at ¶ 10. Defendants Caroline W. Ahl and Dennis Hanrahan were, in 2011, the members of the Civil Service Commission. *See id.* at ¶ 11. Defendant Robert Megna was, in 2011, the Director of the New York State Division of the Budget. *See id.* at ¶ 12. Defendant Thomas P. DiNapoli is the Comptroller of the State of New York. *See id.* at ¶ 13.

**B.  Memorandum of Agreement in Effect in 2011 Between New York and NYSPIA**

During 2011, the State of New York and NYSPIA were parties to a Memorandum of Agreement ("MOA") for a collective bargaining agreement ("CBA") for the period April 1, 2007, through March 31, 2011 (the "2007-11 MOA"). *See* Dkt. No. 88-2 at ¶ 14. Paragraph 23 of the 2007-11 MOA provided that

> [a]ll other terms and conditions of employment in the expired collective bargaining agreement and existing arbitration awards shall continue unless they have sunset or otherwise ended or they have been replaced by this agreement or other interest arbitration award(s). This shall not be construed as an agreement to make any portion of any interest arbitration award subject to the provisions of Article 15 of the Contract absent the express consent of both parties.

*Id.* at ¶ 15.

**C.  Interest Arbitration Awards and CBAs Between New York and NYSPIA Before 2011**

The interest arbitration awards referred to in paragraph 23 of the 2007-11 MOA were for April 1, 2003 through March 31, 2005, and April 1, 2005 through March 31, 2007. *See id.* at ¶ 16. Prior to those interest arbitration awards, the State of New York and NYSPIA were parties to

4

a CBA for the term April 1, 1999 to March 31, 2003 (the "1999-2003 CBA"). *See id.* at ¶ 17. As of the filing of the Amended Complaint, on February 28, 2014, the 1999-2003 CBA remained in effect. *See id.* at ¶ 18. No provision of the 1999-2003 CBA relevant to this litigation was affected by these interest arbitration awards or the 2007-11 MOA. *See id.* at ¶ 19; *see also* Dkt. No. 94-45 at ¶ 19.

Section 11.1 of the 1999-2003 CBA provided as follows: "The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on March 31, 1991 with the State's health and dental insurance carriers unless specifically modified or replaced pursuant to this Agreement." Dkt. No. 88-2 at ¶ 20. Section 11.2(H) of the 1999-2003 CBA provided that "[t]he State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage, provided under the Empire Plan." *Id.* at ¶ 23. Section 11.6(A) of the 1999-2003 CBA provided: "The unremarried spouse of an employee, who retires after April 1, [1979], with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees, i.e., 10 percent for the cost of individual coverage and 25 percent of the cost of dependent coverage." *Id.* at ¶ 25; Dkt. No. 94-45 at ¶ 25.

The Agreement between the State of New York and NYSPIA from 1995-1999 (the "1995-99 CBA") contained the identical sections 11.1, 11.2(H), 11.2(I), and 11.6(A). *See* Dkt. No. 88-2 at ¶ 26; Dkt. No. 94-45 at ¶ 26. Similarly, the 1982-85, 1985-88, 1988-91, 1991-95 CBAs all contained the same or substantially the same provisions. *See id.* at ¶¶ 27-36; Dkt. No. 94-45 at ¶¶ 27-36.

**D.     Legislation, Administrative Measures, and Fiscal Crisis**

The Court will not repeat all of the facts relating to the 1983 and 2011 Legislation, the fiscal crisis facing the State in 2010 and 2011, or the parties' arguments relating to Defendant Hite acting as the head of the Department of Civil Service. Rather, the Court refers the parties to the discussion set forth in the accompanying Memorandum-Decision and Order from the Lead Case.

**E.    The Amended Complaint and Pending Motion for Summary Judgment**

In their first cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees violated the Contracts Clause of Article I, § 10 of the United States Constitution. *See* Dkt. No. 51 at ¶¶ 105-18. Defendants contend that the Court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right to a perpetually fixed health insurance premium contribution rates. *See* Dkt. No. 88-1 at 11-16. Further, Defendants argue that, even if Plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they failed to demonstrate a substantial impairment of that right. *See id.* at 16-19. Moreover, Defendants contend that they are entitled to summary judgment on this claim because the law at issue served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary. *See id.* at 19-23.

The second cause of action alleges that L. 2011 Ch. 491, as applied to Plaintiffs, violates their rights under the Contracts Clause and Due Process Clause of the United States Constitution. *See* Dkt. No. 51 at ¶¶ 119-22. Defendants claim that they are entitled to summary judgment as to this cause of action because it is entirely duplicative of Plaintiffs' "fatally defective Contracts Clause and Due Process claims and must be dismissed." Dkt. No. 88-1 at 24.

In their third cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees breached Plaintiffs' contractual rights under the 2007-11 CBA. *See* Dkt. No. 51 at ¶¶ 123-26. Defendants contend that the Court should

6

decline to exercise supplemental jurisdiction over this claim since there is no viable federal claim and that this claim should otherwise be dismissed because it lacks merit. *See* Dkt. No. 88-1 at 24-26.

The fourth cause of action alleges that the increase to the premium contribution rate violated Plaintiffs' right to due process under the Fourteenth Amendment. *See* Dkt. No. 51 at ¶¶ 127-34. Defendants contend that they are entitled to summary judgment because Plaintiffs do not have a property interest in a perpetually fixed premium contribution rate. *See* Dkt. No. 88-1 at 26-30. Additionally, Defendants contend that, even if Plaintiffs had a property interest, the claim still fails because they had an adequate state-court remedy of which they failed to avail themselves. *See id.* at 30-33.

Plaintiffs' fifth and sixth causes of action allege that Defendants' extension of the premium contribution increase was *ultra vires* because it was not authorized pursuant to Civil Service Law § 167(8). *See* Dkt. No. 51 at ¶¶ 135-51. Defendants contend that these claims should be dismissed because the Court lacks subject matter jurisdiction over them and they are otherwise meritless. *See* Dkt. No. 88-1 at 33-38.

Finally, in their seventh cause of action, Plaintiffs contend that Defendants violated their due process rights under Article I, § 6 of the New York State Constitution. *See* Dkt. No. 51 at ¶¶ 152-58. Defendants assert that they are entitled to summary judgment as to this claim because the New York State Constitution does not provide for a private right of action where other remedies, including 42 U.S.C. § 1983, are available and that the claim is otherwise meritless. *See* Dkt. No. 88-1 at 39-40.

### III. DISCUSSION

**A.  Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

The Court will not restate here all of the relevant law or reasons why Defendants' motion for summary judgment is granted as to Plaintiffs' five named causes of action. Rather, the Court directs the parties to the discussion in the Lead Case, which addresses each of the raised arguments. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102. The Court will only briefly address arguments raised by Plaintiffs that are distinct from those addressed in the Lead Case.

**B.    Plaintiffs' Claims**

In support of their Contracts Clause claim, Plaintiffs rely on a Memorandum of Understanding executed on November 18, 1982 and a purported oral side deal pertaining to employees who retire on or after January 1, 1983. *See* Dkt. No. 94 at 10-11. No reasonable finder of fact could conclude the existence of such a side deal because it was never memorialized in any agreement, including the 1982 Memorandum of Understanding or any of the CBAs at issue. *See* Dkt. No. 94-8 at 3. Indeed, the Memorandum of Understanding, by its plain terms, a memorandum of the parties' understanding, makes no mention of pertaining to those who retire on or after January 1, 1983, and nothing about premium contribution rates in retirement. *See id.*

As discussed in detail in the Lead Case, ordinary principles of contract interpretation require the Court to conclude that none of the CBAs at issue guaranteed a perpetually fixed premium contribution rate into retirement. *See M & G Polymers USA, LLC v. Hobert Freel Tackett*, ___U.S.___, 135 S. Ct. 926, 937 (2015) (holding that, while a CBA may explicitly provide that certain terms continue after the agreement's expiration, when a contract fails to address the duration of retiree benefits, "a court may not infer that the parties intended those benefits to vest for life"). While the CBAs at issue all provide that retirees have the right to continue receiving health insurance through the NYSHIP, they are all silent as to the premium contribution rate to be paid by retirees. *See Serafino v. City of Hamtramck*, 707 Fed. Appx. 345, 352-53 (6th Cir. 2017) ("Looking to the four corners of the agreements, there is no indication that the City intended to provide *any* healthcare benefit to retirees for life, let alone a right to deductible-free, low-co-pay, forever-unalterable healthcare insurance") (emphasis in original). This conclusion is further supported by the legislation passed in 1983 providing that the State would continue to pay the full premium for pre-January 1, 1983 retirees. If retirees had a contractually vested perpetual right to the same contribution rates in effect at the time of their

9

retirement, there would have been no need for an affirmative legislative carve-out specifically applicable to them. Finally, as set forth in the Lead Case, the undisputed facts establish that, even if Plaintiffs had a vested right to a perpetual fixed contribution rate, the small increase to the contribution rate was not a substantial impairment and the increase was reasonable and necessary in furtherance of an important government interest. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 26-32.

Plaintiffs rely on *Fletcher v. Honeywell Int'l, Inc.*, 238 F. Supp. 3d 992 (S.D. Ohio 2017), in support of their argument that, because surviving spouses are guaranteed specific benefits in retirement, there is a very "strong inference" that the parties also intended to vest lifetime healthcare benefits to retirees themselves. The Sixth Circuit, however, recently reversed the district court, holding that language providing that, "[u]pon the death of a retiree, the Company will continue coverage for the spouse and dependent children for their lifetime," neither indicated nor even implied that the agreement provided healthcare to retirees until their deaths; instead, it meant that the agreement provided "lifetime healthcare for surviving spouses and dependents but not for the retirees themselves." *Fletcher v. Honeywell Int'l, Inc.*, 892 F.3d 217, 226 (6th Cir. 2018).

Plaintiffs' breach of contract cause of action must also be dismissed. Plaintiffs point to no contractual provision that was breached. The provisions regarding health insurance premiums do not extend beyond the life of the CBA and do not create a vested right to perpetually fixed premium contributions. *See Gallo*, 813 F.3d at 268.

As to Plaintiffs' due process claims, the undisputed facts demonstrate that neither the CBAs nor Civil Service Law § 167 created a property interest in fixed premium contribution rates in retirement. *See Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987); *Pineman v.*

*Fallon*, 662 F. Supp. 1311, 1318 (D. Conn. 1987) ("[G]enerally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future"). Nothing prevented New York from amending Section 167(8) and extending the premium shifts negotiated in 2011 to unrepresented employees and retirees. Further, Plaintiffs failed to address Defendants' argument that the due process cause of action is subject to dismissal because of the availability of a post-deprivation Article 78 proceeding. *See Campo v. N.Y.C. Emps. Ret. Sys.*, 843 F.2d 96, 102 (2d Cir. 1988); *Minima v. N.Y.C. Emps. Ret. Sys.*, No. 11-cv-2191, 2012 WL 4049822, *6 (E.D.N.Y. Aug. 17, 2012). Finally, contrary to Plaintiffs' argument, retiree premium contributions are not a form of deferred compensation. *See M&G Polymers USA LLC*, 135 S. Ct. 936 ("Retiree benefits are not a form of deferred compensation").

Even assuming that Plaintiffs' *ultra vires* causes of action were not previously dismissed by the Court and are not claims brought pursuant to Article 78 over which the Court would not have subject matter jurisdiction, the claim is still subject to dismissal. As set forth more fully in the Lead Case and *Spence v. Cuomo*, No. 1:11-cv-1533, Dkt. No. 109 at 23-24 (N.D.N.Y.), Defendants Hite and Megna acted in accordance within their authority as provided by Civil Service Law § 167(8).

Based on the foregoing, Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion for summary judgment (Dkt. No. 88) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall attach a copy of the decision in the Lead Case (*Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102) to this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated: September 24, 2018
      Albany, New York

Mae A. D'Agostino
U.S. District Judge